**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JUAN RAMON BRIZO ESCOTO,

Petitioner,

v. No. 2:26-cv-01727-KG-JHR

DAVID VENTURELLA, *et al.*,

Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Petitioner Juan Ramon Brizo Escoto's Petition for a Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. [Doc. 1]. Chief District Judge Kenneth Gonzales referred the petition to me to submit proposed findings and a recommended disposition pursuant to 28 U.S.C. § 636. [Doc. 8]. Respondents[1] filed a response [Doc. 6] and Petitioner filed a reply [Doc. 12]. Having reviewed the briefing, case record, and applicable law, I recommend the Court GRANT IN PART Petitioner's habeas petition and ORDER Respondents to provide Petitioner with a bond hearing.

## I. PROCEDURAL BACKGROUND

Petitioner, a Honduran national and seventeen-year-old minor at the time, entered the United States without inspection on or near June 21, 2004, before Border Patrol found and apprehended him. [Doc. 6-8]. Border Patrol released Petitioner into his aunt's custody with a Notice to Appear on December 9, 2004, before an immigration judge in Harlingen, Texas. *Id.*

[1] The "United States Respondents" include Respondents David Venturella in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), Joe Garcia in his official capacity as Field Office Director for the El Paso Field Office for ICE, Markwayne Mullin in his official capacity as Secretary of the Department of Homeland Security ("DHS"), and Todd Blanche in his official capacity as Acting Attorney General of the United States. The United States Respondents filed the response to which Respondent Dora Castro, Warden of the Otero County Processing Center where Petitioner is detained, joined. [Doc. 5].

Petitioner left for New York in search of his father and did not appear at his hearing.[2] At the hearing, the presiding immigration judge issued an order of removal to Honduras *in absentia*. [Doc. 1-3]. Border Patrol issued an administrative warrant for Petitioner's arrest on December 22, 2004. For reasons unexplained in the record, the warrant and removal order was unenforced for over two decades while Petitioner resided in the United States. During that time, Petitioner states he met his wife and had two children, both of whom suffer from PTSD and several other medical conditions. [Doc. 1, at 3]. The record does not reflect Petitioner accrued any criminal charges, fines, arrests, civil suits, or traffic citations between his entry and his current detention.

In March 2025, Petitioner applied to the United States Citizenship and Immigration Services ("USCIS") for a U visa. [Doc. 1-2]. U visas are nonimmigrant visas available to aliens who suffered or are related to someone who suffered substantial physical and mental abuse from a crime against them, possess information about that crime, and can assist law enforcement. 8 U.S.C. § 1101(a)(15)(U). As part of his application process, Petitioner attended a meeting with immigration authorities for fingerprinting and biometrics on November 19, 2025. [Doc. 1, at 3]. ICE agents took Petitioner into custody at the meeting to execute his removal order. *Id.* The Government has kept Petitioner detained since his arrest.

Petitioner filed a motion to reopen his removal proceedings, which an immigration judge denied on December 4, 2025. [Doc. 6-1]. However, the judge did not halt Petitioner's U visa application with the USCIS. *Id.* Petitioner appealed the denial to the Board of Immigration Appeals (BIA) on December 23, 2025, where it awaits resolution. On May 28, 2026, Petitioner filed his habeas petition, challenging his detention as unlawfully prolonged.

---

[2] The parties dispute the cause of Petitioner's failure to appear at the hearing, which is relevant to the merits of Petitioner's motion to reopen. *See* [Doc. 6-1]. I therefore do not weigh in on the matter.

## II. BRIEFING SUMMARY

The parties agree, and I recommend the Court find, that Respondents detain Petitioner pursuant to the detention statute for aliens subject to final removal orders, 8 U.S.C. § 1231. *See* 8 C.F.R. § 1241.1(e) (removal orders issued *in absentia* are final upon their entry). Petitioner contends that his continued detention violates 8 U.S.C. § 1231 because his removal from the United States is no longer reasonably foreseeable under the standard set by the Supreme Court in *Zadvydas v. Davis*. [Doc. 1, at 7]. As grounds, Petitioner cites the length of his detention and his BIA appeal and U visa application, which Petitioner argues lack any foreseeable or reliable "decision date." [Doc. 12, at 4]. For similar reasons, Petitioner argues his detention violates his due process rights under the Fifth Amendment. [Doc. 1, at 10].

Respondents argue Petitioner's detention under 8 U.S.C. § 1231 is lawful because Petitioner caused his removal's delay by his filings in his immigration case. [Doc. 6, at 10]. Respondents cite the Tenth Circuit's decision in *Soberanes v. Comfort*, 388 F.3d 1305, 1311 (10th Cir. 2004), for the proposition that a detained alien does not have a *Zadvydas* claim until all administrative proceedings and challenges to his removal have resolved. *See id.* at 10–11. In the alternative, Respondents argue that Petitioner's detention is lawful under *Zadvydas* because his immigration proceedings have an inevitable concluding point, and Petitioner has given no reason to believe the United States would struggle to remove him to Honduras. *Id.* at 11. Respondents conclude that satisfaction of the *Zadvydas* standard defeats Petitioner's due process claim because his detention is not punitive or arbitrary. *Id.* at 13.

Petitioner replies that neither *Zadvydas* nor *Soberanes* foreclosed habeas relief to aliens because of the failure of their proceedings to timely resolve. *See* [Doc. 12, at 3–4]. Therefore,

Petitioner argues Respondents' failure to produce evidence that his proceedings will conclude in the foreseeable future concedes both his claims. *Id.* at 8–10.

## III. APPLICABLE LAW

### A. Detention of Aliens Subject to Final Removal Orders Under 8 U.S.C. § 1231 and *Zadvydas.*

When an alien is ordered removed, the Government must remove him within a ninety-day "removal period." 8 U.S.C. § 1231(a)(1)(A).[3] If the Government fails to remove the alien before the period expires, it must release him on supervision pending removal. *Id.* § 1231(a)(3). However, the Government may continue detaining someone beyond the removal period if he was found inadmissible, deportable on specified grounds, a flight risk, or a danger to his community. 8 U.S.C. § 1231(a)(6). The statute permits detention without periodic review for bond. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580–81 (2022).

In *Zadvydas*, the Supreme Court addressed the ambiguity around the length of detention § 1231(a)(6) allows. *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court found that the possibility of indefinite detention without parole "would raise a serious constitutional problem." *Id.* at 690. The Fifth Amendment's protection of freedom from physical restraint extends to all people—whether citizen, resident, or alien—who have effected entry into the United States. *Id.* at 690, 693. Since immigration proceedings are civil, due process prohibits detention as a punitive measure. *Id.* at 690. However, the Government can civilly detain aliens to prevent flight from removal proceedings or danger to public safety. *Id.* The Court therefore reasoned that if detention continued

[3] The removal period begins on the latest of the date the removal order became administratively final, the date of a court's decision upon judicial review of the removal order if a stay of removal was entered, or the date the alien is released from detention or confinement unless the detention or confinement was for an immigration process. 8 U.S.C. § 1231(a)(1)(B).

indefinitely for aliens whom the Government failed to remove or show posed a danger, the detention could violate the Constitution. *Id.* at 696.

Invoking the constitutional avoidance canon in light of its due process concerns, the Court determined that 8 U.S.C. § 1231(a)(6) only permitted detention for as long as "reasonably necessary to bring about [an] alien's removal from the United States." *Id.* at 689. To determine what constitutes "reasonably necessary" detention, the Court established a case-by-case test. *See id.* at 699. First, the Court held that detention for six months or less is presumptively reasonable. *Id.* at 701. If detention continues beyond six months, the alien may make a prima facie showing that no good reason exists to believe there is a "significant likelihood of removal in the reasonably foreseeable future." *Id.* Then, the burden shifts to the Government to produce evidence sufficient to rebut the prima facie showing. *Id.* The longer detention lasts, the shorter the "reasonably foreseeable future" must be to justify its continuance. *Id.*

*Zadvydas* originally addressed aliens who had entered lawfully but were subsequently found deportable. *Id.* at 682. The Supreme Court later extended *Zadvydas* to inadmissible aliens detained under 8 U.S.C. § 1231(a)(6) as well. *Clark v. Martinez*, 543 U.S. 371, 378 (2005).

**B. Due Process Rights of Alien Detainees.**

The Supreme Court "has firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). Consequently, aliens enjoy fewer and weaker due process rights than permanent residents and citizens do. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020); *see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982). And in the case of aliens stopped by immigration authorities before effecting entry, whatever "the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (quoting *United States ex rel. Knauff v. Shaughnessy*, 338

U.S. 537, 544 (1950)). At the same time, it is settled law that the Fifth Amendment applies to immigration proceedings. *Demore*, 538 U.S. at 523. Thus, while enjoying fewer procedural due process rights, aliens retain certain substantive due process rights, chief among them protection from unjustifiable or punitive detention. *Zadvydas*, 533 U.S. at 690; *see also Gonzales Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1210–11 (D.N.M. 2020) (discussing Tenth Circuit precedent).

Courts have split over whether the *Zadvydas* test for reasonably necessary detention also defines an alien's due process rights. Some have found that *Zadvydas* governs both statutory and constitutional challenges to prolonged detention under 8 U.S.C. § 1231, with as-applied challenges limited to exceptional cases. *E.g.*, *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024); *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). Other courts have distinguished *Zadvydas*, allowing as-applied due process challenges to proceed independently. *See Diallo v. Lyons*, --- F. Supp. 3d ----, 2026 WL 1791494, at *10–11 (E.D.N.Y. 2026); *Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 938 (D. Colo. 2025).

## IV. ANALYSIS

I recommend the Court find that Petitioner's detention does not violate 8 U.S.C. 1231(a)(6) under *Zadvydas* because his immigration proceedings have not at this time unreasonably extended his detention. I therefore recommend the Court dismiss his *Zadvydas* claim without prejudice. I then recommend the Court find that Petitioner's detention without a bond hearing violates his due process rights, and order Respondents to provide Petitioner with a bond hearing.

### A. Petitioner's Current Detention Does Not Violate *Zadvydas*.

The parties do not dispute that 8 U.S.C. § 1231 and *Zadvydas* govern Respondents' authority to detain Petitioner, that the ninety-day removal period has expired, or that detention has extended beyond the presumptively reasonable six-month period. *See* [Docs. 1, 6]. Thus, Petitioner's *Zadvydas* claim hinges on whether removal is "not reasonably foreseeable" when the

obstacle to removal is lengthy immigration proceedings. *See Zadvydas*, 533 U.S. at 701. Petitioner asserts that *Zadvydas* does not foreclose claims against post-removal-period detention in such cases, and the uncertainty around when he can expect his proceedings to conclude proves his removal is not reasonably foreseeable. *See* [Doc. 12, at 5–6]. Respondents argue the presumptively reasonable six-month period of detention tolls until all of an alien's challenges to his removal are resolved. *Id.* at 11. Regardless, Respondents argue that removal is still reasonably foreseeable since Petitioner's proceedings must end at some point and no administrative obstacle to Petitioner's removal to Honduras exists. [Doc. 6, at 10–11].

*1. Zadvydas claims based on prolonged immigration proceedings.*

The most commonly successful *Zadvydas* claims focus on the inability of the Government to remove an alien despite having full authority to do so. For example, courts have found detention unreasonable when home countries or potential third countries failed to produce travel documents for the petitioner, refused to accept him, lacked diplomatic relations with the United States, or suffered from a war or other national emergency that made removal untenable. *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1124 (10th Cir. 2005); *Khaliq v. Noem*, 828 F. Supp. 3d 1260, 1269 (W.D. Okla. 2026); *Manko v. Anda-Ybarra*, No. 26-cv-00749, 2026 WL 963238, at *2 (D.N.M. Apr. 9, 2026); *Lorenzo v. Bondi*, No. 25-cv-00923, 2026 WL 84521, at *5 (D.N.M. Jan. 12, 2026). In addition, an unexplained lack of progress shown by the Government in securing removal can favor release. *Ndou v. Noem*, --- F. Supp. 3d ----, 2026 WL 686564, at *4 (D.N.M. 2026); *Dudyrev v. Mullin*, No. 26-cv-00767, 2026 WL 1983210, at *3 (D.N.M. July 8, 2026). Conversely, many decisions have found the absence of these factors defeated the petitioners' *Zadvydas* claims. *E.g.*, *Prieto-Romero v. Clark*, 534 F.3d 1053, 1063 (9th Cir. 2008) (applying *Zadvydas* to 8 U.S.C. § 1226(a) detention); *accord Gonzales Aguilar*, 448 F. Supp. 3d at 1211.

In *Soberanes*, the Tenth Circuit addressed whether a petitioner was entitled to release under *Zadvydas* because his post-removal-period detention was prolonged while the Ninth Circuit reviewed his appeal of his deportation order. *See Soberanes*, 388 F.3d at 1311. The Tenth Circuit ruled that the petitioner's *Zadvydas* claim failed because the judicial review process "has a definite and evidently impending termination point," and therefore "his detention is neither indefinite nor potentially permanent." *Id.* Petitioner argues that *Soberanes* should be limited to cases where a single, "discrete" judicial proceeding prevents an alien's removal. [Doc. 12, at 5].[4] However, *Soberanes* expressly likened its reasoning to Supreme Court decisions which found detention during an alien's "administrative review process" constitutionally valid. *Soberanes*, 388 F.3d at 1311. Furthermore, subsequent decisions from the Tenth Circuit and others endorsed the principle that prolonged immigration proceedings do not trigger a *Zadvydas* violation per se. *See Mwangi v. Terry*, 465 F. App'x 784, 787 (10th Cir. 2012) (applying *Zadvydas* to 8 U.S.C. § 1226(a) detention); *Prieto-Romero*, 534 F.3d at 1063–64; *G.P. v. Garland*, 103 F.4th 898, 902 (1st Cir. 2024); *Castaneda*, 95 F.4th at 758 ("ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable").

However, many of these decisions acknowledged that prolonged detention caused by bad-faith or undue delay could sustain a *Zadvydas* challenge. *Soberanes*, 388 F.3d at 1311 (affirming dismissal of *Zadvydas* claim without prejudice because the "timely consideration and disposition" of the petitioner's appeal could change); *See Garland*, 103 F.4th at 902; *Castaneda*, 95 F.4th at 758 & n.7. And this Court recognized that dilatory or unreasonably long civil detention during

---

[4] Petitioner also cites *Immigr. Ctr. for Women & Children v. Noem*, --- F.R.D. ----, 2026 WL 1455004 (C.D. Cal. 2026) to argue his removal as a U visa applicant is not reasonably foreseeable. But that case concerned an Administrative Procedures Act challenge to the Trump Administration's new rule to arrest and detain all petitioners for U visas, T visas, and for relief under the Violence Against Women Act, and thus the legal claims at issue did not concern whether detention was reasonably necessary to effect removal. *Immgr. Ctr.*, 2026 WL 1455004, at *2.

immigration proceedings can exceed the Government's power to detain under 8 U.S.C. § 1231, or at least factor into the *Zadvydas* analysis. *Jimenez Chacon v. Lyons*, 811 F. Supp. 3d 1299, 1310 (D.N.M. 2026); *Fuenmayor v. Blanche*, No. 26-cv-01936, 2026 WL 2014248, at *2 (D.N.M. July 13, 2026). Consequently, I recommend the Court find that prolonged detention caused by ongoing immigration proceedings or judicial review does not violate 8 U.S.C. § 1231(a)(6) under *Zadvydas* unless the petitioner can demonstrate bad-faith dilatory tactics or undue delay.

*2. Analysis.*

Applying that standard here, I recommend the Court conclude Petitioner's current detention does not violate *Zadvydas*. As of the time of this recommended disposition, Petitioner has remained in detention for nine months, or three months past the presumptively reasonable period. While Petitioner represents his BIA appeal is ongoing and his U visa application is pending, he did not produce any evidence of bad-faith dilatory tactics by the Government or that the BIA or USCIS[5] has taken—and would continue to take—an undue length of time to resolve his status. I note that Respondents failed to explain the two-decade lapse in enforcement of Petitioner's removal order. *See* [Doc. 1, at 2–3]; [Doc. 6, at 3–4]. However, because Petitioner was not taken into custody during that time nor did he demonstrate the delay resulted from the Government's inability to remove him to Honduras, his *Zadvydas* claim fails. *See Zadvydas*, 533 U.S. at 690 (due process concern for 8 U.S.C. § 1231 is unjustifiable physical restraint). Consequently, I recommend the Court dismiss Petitioner's *Zadvydas* claim without prejudice.

**B. Petitioner's Continued Detention Without a Bond Hearing Violates The Fifth Amendment.**

[5] I note too that Petitioner's U visa application can proceed even if he is removed. *See* [Doc. 6-1] (citing 8 C.F.R. § 214.14(c)(1)(ii)).

Because I recommend the Court find Petitioner's Zadvydas claim fails, the next issue is whether the Fifth Amendment provides Petitioner any additional protection, such as entitlement to a bond hearing. Respondents argue that Petitioner's detention without bond does not violate due process because his detention ensures the Government's ability to remove him if his immigration proceedings conclude in its favor. [Doc. 6, at 12]. The length of the delay does not factor into the analysis, the Government argues, for the same reason the *Zadvydas* claim fails: Petitioner caused his own prolonged detention by challenging his removal. *Id.* at 13. Petitioner argues that his detention without bond violates due process because Respondents have no basis to assert detention without bond is necessary for Petitioner specifically to ensure his cooperation or prevent the risk of danger to the public. [Doc. 12, at 9]. Thus, his detention serves only to violate his liberty and separate him from his family. *Id.* at 10.

*1.* *Due process challenges and Zadvydas.*

As discussed above, courts have split on whether *Zadvydas* governs the due process rights of aliens against prolonged detention under 8 U.S.C. § 1231. Decisions which held *Zadvydas* governs emphasize the constitutional analysis the opinion relies on and the lesser protection the Fifth Amendment affords aliens in immigration proceedings. *Castaneda*, 95 F.4th at 760 (citation omitted) ("In other words, the *Zadvydas* standard *is* due process.") (emphasis in original); *see also Gonzales Aguilar*, 448 F. Supp. 3d at 1210–12 (addressing arriving aliens). If an alien's detention satisfies *Zadvydas*, a separate due process challenge may only be available in exceptional circumstances. *Vizguerra-Ramirez v. Baltazar*, No. 25-cv-00881, 2025 WL 3653158, at *9 (D. Colo. Dec. 17, 2025) (collecting cases). By contrast, decisions which reject *Zadvydas* governs due process rights have pointed to *Zadvydas*'s focus on statutory interpretation and virtually permanent

detention. *Arostegui-Maldonado*, 794 F. Supp. 3d at 938; *Juarez v. Choate*, No. 24-cv-00419, 2024 WL 1012912, at *6 (D. Colo. Mar. 8, 2024); *accord Diallo*, 2026 WL 1791494, at *10.

I recommend the Court find *Zadvydas* is not dispositive of an alien's due process claims under 8 U.S.C. § 1231 for three reasons. First, *Zadvydas* focused on statutory, not constitutional interpretation. While the Supreme Court's holding depended on Fifth Amendment analysis, it did so to determine whether the statute permitted *indefinite* detention on its face. *Zadvydas*, 533 U.S. at 691. As the Supreme Court later described, *Zadvydas* addressed the possibility of trapping an alien in a "removable-but-unremovable limbo" where detention became never-ending. *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 347 (2005); *see also Demore*, 538 U.S. at 529. Such a violation requires immediate release because the statutory authority to detain the alien expires. *Zadvydas*, 533 U.S. at 701. Those courts which have found *Zadvydas* governs due process claims thus failed to consider the scenario which *Zadvydas* did not address: the constitutional necessity of bond hearings after prolonged detention. *See Castaneda*, 95 F.4th at 760; *see also Wang*, 320 F.3d at 146.

Second, the Supreme Court has never foreclosed due process challenges to prolonged detention without the possibility of bond, both under § 1231 and related statutes; instead, the Supreme Court limited its analysis to the lack of bond permitted by these statutes' text. *See Arteaga-Martinez*, 596 U.S. at 583; *Jennings v. Rodriguez*, 583 U.S. 281, 312 (2018). And where the Supreme Court has addressed bond, it ruled that immigrations proceedings concluded quickly enough and the risk of flight was severe enough *on average* to permit the Government to detain an alien without making an individualized finding of a flight risk or public danger. *See Demore*, 538 U.S. at 526, 528. These decisions never addressed scenarios where an individual's proceedings have stretched on for months or years, during which the Government's justification to continue

detention without bond wanes. *See Zadvydas*, 533 U.S. at 691, 701. If *Zadvydas* settled that the Fifth Amendment does not provide aliens with an opportunity for bond after prolonged detention, the Supreme Court has foregone multiple opportunities to say so.

Third, Petitioner belongs to a category of aliens entitled to more procedural due process than arriving aliens. *Mezei*, 345 U.S. at 212 ("[A]liens who have once passed through our gate, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."). Unlike those aliens for whom Congress's "sovereign prerogative" to admit or exclude as it chooses is at its peak, Petitioner has resided and raised a family in the United States for over two decades, forming with this country the "enduring attachments of normal life." *See Garcia Domingo v. Castro*, 806 F. Supp. 3d 1246, 1252 (D.N.M. 2025) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *cf. Thuraissigiam*, 591 U.S. at 139; *Gonzales Aguilar*, 448 F. Supp. 3d at 1212 (upholding detention without possibility of bond for arriving aliens). In sum, *Zadvydas*'s focus on indefinite detention and statutory authority, the Supreme Court's allowance of as-applied due process challenges, and the entitlement of long-time residing aliens to greater due process weigh against *Zadvydas* precluding Petitioner's due process claim.

I recommend the Court rely on *Mathews v. Eldridge*, 424 U.S. 319 (1976) to analyze Petitioner's due process claim as it has for other due process challenges related to bond in immigration cases. *Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1242–43 (D.N.M. 2025); *Singh v. Noem*, 824 F. Supp. 3d 1197, 1213 (D.N.M. 2026); *Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282–83 (D.N.M. 2026); *accord Diallo*, 2026 WL 1791494, at *10. Generally, the process due an individual from the Fifth Amendment requires a balance between the petitioner's interest at stake, the risk of erroneous deprivation of such interest by the procedures currently in

use and the probable value of additional or new procedures, and the Government's interest including the fiscal and administrative burdens of additional or new procedures. *Requejo Roman*, 816 F. Supp. 3d at 1283.

The District of Colorado has employed more specific factors to consider when the due process challenge depends in part on the length of detention. *Arostegui-Maldonado*, 794 F. Supp. 3d at 939; *see also Martinez v. Ceja*, 760 F. Supp. 3d 1188, 1194 (D. Colo. 2024). Relevant here, I recommend the Court should also consider the length of detention to date, the likely length of detention in the future, conditions of detention, and delays in removal caused by both Petitioner and the Government. *Arostegui-Maldonado*, 794 F. Supp. 3d at 939.[6]

*2. Analysis.*

Applying the factors discussed above, I recommend the Court find that Petitioner's detention without the possibility of bond violates his due process rights, and the Government should provide him with a bond hearing or immediately release him under supervision if it fails to do so.

Here, Petitioner has the most "elemental of liberty interests" at stake: his freedom from unjustifiable confinement. *Singh*, 824 F. Supp. 3d at 1213 (internal quotation omitted). Petitioner has remained in detention for nine months as of this report and recommendation, well beyond the presumptively reasonable period under *Zadvydas*. While it does not appear from the record that Petitioner suffers from intolerable or punitive conditions of confinement, his detention is likely to continue for a while as the BIA consider his appeal and any judicial review is resolved. And this Court has recognized that release on supervision alone is enough of a protected interest to warrant

[6] I recommend the Court not consider the final factor, the likelihood the alien's challenge to their removal order will fail, as this could lead the Court to go beyond the limits of its jurisdiction with immigration habeas petitions. *See Arostegui-Maldonado*, 794 F. Supp. 3d at 939 (listing factors); 8 U.S.C. § 1252.

procedural protection. *Garcia Domingo*, 806 F. Supp. 3d at 1252. Petitioner's interests in this matter warrant that his continued detention without possibility of parole be justified for him individually.

Respondents emphasize Petitioner's challenge to his removability has caused his own prolonged detention and thus his detention should not be considered a constitutional violation. I recommend the Court reject this argument for three reasons. First, it would allow the Government to require aliens with meritorious cases to choose between years-long detention without the possibility of bond or foregoing proceedings to which Congress has entitled them. *See Fuenmayor*, 2026 WL 2014248, at *2. Second, the Government has failed to offer any explanation why Petitioner's order of removal and arrest warrant went unenforced for two decades. During that time, Petitioner has had a family, earned a living, and resided in the United States without any indication of a criminal history. Thus, the circumstances of Petitioner's current proceedings were not caused entirely by him. Third, providing Petitioner with a bond hearing does not automatically entitle him to release. Thus, his initiation of review proceedings as a cause of prolonged detention should not weigh for or against requiring a bond hearing. *See Martinez*, 760 F. Supp. 3d at 1195.

Finally, the Government has legitimate and important interests in preventing public safety risks and ensuring Petitioner's cooperation and presence for removal. However, the Government has never had to show Petitioner's conditional release would threaten those interests. Moreover, the Government could not argue a bond hearing is unduly burdensome since both Congress and the Government already afford this minimum safeguard to other aliens. *See Diallo*, 2026 WL 1791494, at *10.

Based on the balancing of these factors I recommend the Court find that Petitioner's continued detention without a bond hearing violates his due process rights. As a remedy, I

recommend the Court require Respondents to provide Petitioner with a bond hearing under 8 C.F.R. § 236.1(c)(8).

## V. CONCLUSION

In sum, for the reasons above I recommend the Court GRANT IN PART Petitioner's habeas petition [Doc. 1], DENY WITHOUT PREJUDICE Petitioner's *Zadvydas* claim, GRANT IN PART Petitioner's due process challenge to his continued detention without bond, and ORDER Respondents to provide Petitioner with a bond hearing pursuant to 8 C.F.R. § 236.1(c)(8) within **seven (7) days** of the Court's order, or immediately release Petitioner under conditions of supervision if they fail to do so.

HON. JERRY H. RITTER
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**